THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

At common law a carrier of passengers and freight is under no obligation to provide depots for passengers awaiting transportation or warehouses for freight.

No such obligation is imposed by the General Railroad Act of this State (chap. 140 Laws of 1850) or the various amendments thereof, upon railroad corporations organized under it.

The obligation may not be implied from the fact that such corporations are executing a public trust, and authorized by the act to "erect and maintain all necessary and convenient buildings, stations * * * for the accommodation and use of their passengers, freights and business." (§ 28, subd. 8.) The exercise of this power is in the discretion of the corporation, and with the exercise of that discretion the legislature alone can interfere.

*It seems* the legislature has power to impose such an obligation.

The railroad commission, organized under and in pursuance of the act of 1882 (chap. 353, Laws of 1882) has judicial power to hear and determine, upon notice, questions arising between the people and a railroad corporation, but no power is given to it, or to any court, to enforce the decision, and its proceedings and determinations amount to nothing more than an inquest for information. The attorney-general is given no new power in the matter, and the corporation may continue the management of its business in its own way, without regard to the judgment of the commissioners.

*State* v. *N. H. & N. R. R. Co.* (37 Conn. 153), distinguished.

While the courts may, by *mandamus*, act in certain cases affecting corporate matters, they can only do so where the duty concerned, and thus attempted to be enforced, is specific and plainly imposed upon the corporation.

*People* v. *D. & C. R. R. Co.* (58 N. Y. 152); *People ex rel.* v. *B. & A. R. R. Co.* (70 N. Y. 569); *People ex rel.* v. *R. & S. L. R. R. Co.* (76 N. Y., 294), distinguished.

Accordingly, *held*, that the Supreme Court had no jurisdiction to grant a writ of *mandamus* on behalf of the people, at the instance of the attorney-general, requiring a railroad corporation to erect a building at a station on its road of sufficient capacity to accommodate the passengers and freight business at that place, although it appeared, and was conceded by the corporation, that its station building was entirely inadequate for these purposes, that the absence of a suitable depot building and warehouse was a serious injury to the public doing business at that station, and that upon a complaint made to the railroad commissioners, and, upon notice to the defendant, that body adjudged and recommended that the company should construct a suitable building within a time named, with which recommendation it refused to comply, not for want of means, but because its directors decided not to do so.

(Argued November 22, 1886 ; decided January 18, 1887.)

Appeal from order of the General Term of the Supreme Court, in the fifth judicial department, made the first Tuesday of June, 1886, which affirmed an order of Special Term, granting a peremptory writ of *mandamus*, the substance of which as well as the material facts are stated in the opinion.

*E. C. Sprague* for appellant. A *mandamus* will not lie to compel the performance by a corporation of any specific act, where its performance is vested in the discretion of the directors of the corporation. (*Catterham R.* v. *London, etc. Co.*, 1 C. B., N. S., 87 E. C. L. R. 410, 417 ; *So. E. R.* v. *R. Com.*, 5 L. R., Q. B. D. 217, 234, 238 ; 6 id. 586; *Hall & Co.* v. *London, etc. R. Co.*, 157 id. 505, 537 ; *Conn.* v. *N. H. & N. H. R. R. Co.*, 37 Conn. 153 ; *McDonald* v. *Chicago, etc., R. R. Co.*, 26 Ia. 124; *Liscomb* v. *N. J. R. R. Co.*, 6 Lans. 75 ; *N. Y. & H. R. R. R. Co.* v. *Kip*, 46 N. Y. 546; *People* v. *N. Y. L. E. & W. R. R. Co.*, 28 Hun, 548; *People* v. *N. Y. L. E. & W. R⁵R. Co.*, 22 id. 533 ; *People* v. *L. I. R. R. Co.*, 31 id., 125.) That there does not exist such a complete and perfect legal right on the part of the people, and such a clear and legal obligation on the part of the defendant to construct a new station building at Hamburgh as to justify the issuing of a *mandamus*, is

maintainable under the following authorities : (1 *Redf. on R.* 633 ; 2 id. 249 ; *People* v. *Supervisors, etc.* 64 N. Y. 600 ; *Minn.* v. *Railway Co.*, 40 Minn. 40 ; *People* v. *Railway Co.*, 63 How. Pr. 291 ; High on Extr. Rem., §§ 315–322 ; *Peik* v. *Chicago R. R. Co.*, 4 Otto, 164, 178 ; *Louisville R. R. Co.* v. *R. R. Com.*, 19 Fed. R. 679, 698 ; Cooley on Const. Lim. 147.) The State having no direct interest in the subject matter of this proceeding, it could only be instituted at the relation of the parties interested, and should, therefore, be dismissed. (Code of Civ. Proc. §§ 1991, 1993, 1994.)

*D. O'Brien*, attorney-general, for respondent. A railroad company is a private corporation in the sense that the ownership of its property is private. But it is a public corporation in the sense that the user of its property is public. (*Olcott* v. *Supervisors, etc.*, 6 Wall. 678, 694, 695 ; *Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend. 9 ; *Worcester* v. *R. R. Co.*, 4 Met. 566 ; *Talcott* v. *Pine Grove*, 1 Flippin, 19 ; *Messenger* v. *R. R. Co.*, 36 N. J. L. 407, 413.) The powers granted having been exercised by the company — the road constructed — the duty of maintaining the road for the benefit of the public is mandatory, and this court has the power to compel the company to maintain and operate its road in such manner as to carry out the object for which it was incorporated. (*Farmers' L. & T. Co.* v. *Henning, etc.*, 17 Am. L. Reg. [U. S. Ct.] 266, [ed. of 1878] ; *Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend. 21 ; *People* v. *N. Y. C. etc. R. R. Co.*, 28 Hun, 548, 550.) A railroad company can be compelled by *mandamus* to operate its entire road for the use of the public. (*People* v. *A. & R. R. Co.*, 24 N. Y. 261 ; Potter's Law of Corp. ; *Hall* v. *London & B. Co.*, 15 Q. B. D. 505 ; Rorer on Railroads, 474 ; *In re N. Y. & H. R. R. Co.* v. *Kip*, 46 N. Y. 546, 552.) As common carriers, it is the duty of railroad companies to have a suitable place for the receipt of goods. (*Sherman* v. *H. R. R. R. Co.*, 64 N. Y. 254 ; *Fenner* v. *B. & S. L. R. Co.*, 44 id. 505 ; *Hedge* v. *H. R. R Co.*, 49 id. 223 ; *Rogers* v. *L. I. R. R. Co.*, 1 T. & C.

396; 56 N. Y. 620.)   The railroad company is a creature of the legislature and is subject to the direction of the court, and *mandamus* has been recognized as the appropriate remedy to compel railroad companies to perform duties owing to the public.  (*Trust Co.* v. *R. R. Co.*, 17 Am. L. Reg. [N. S.] 266; *People ex rel. Greene* v. *D. & C. R. R. Co.*, 58 N. Y. 152; *People* v *R. R. Co.*, 70 id. 569; *State* v. *Gorham*, 37 Me. 45; *Cambridge* v. *R. R. Co.*, 7 Met. 70; *People* v. *R. R. Co.*, 14 Hun, 371; 76 N. Y. 294; *State* v. *R. R. Co.*, 9 Rich. [Ill.] 247; *R. R. Co.* v. *People*, 56 Ill. 365; *R.*, *N. B. & C. R. R. Co.*, 1 P. & B. [New Bruns.] 667; *State* v. *R. R. Co.*, 29 Conn. 538; *R. R. Co.* v. *Hall*, 91 U. S. 343; *Hall* v. *U. P. R. R. Co.*, 3 Dill. 515; *U. S.* v. *U. P. R. R. Co.*, 4 id. 479; *State* v. *R. R. Co.*, 37 Conn. 154; *King* v. *R. R. Co.*, 2 Barn. & Ald. 646; *State* v. *Wilmington Bridge Co.*, 3 Harr. [Conn.] 312; *In re Trenton W. P. Co.*, 20 N. J. L. 659; *Reg.* v. *Bristol Dock Co.*, 2 Q. B. 64; *People* v. *Manh. Co.*, 45 Barb. 136; *City* v. *St. Louis Gas Co.*, 70 Mo. 69, 117; *Horiston* v. *Comm.*, 36 Tex. 382; *Riggs* v. *Johnson Co*, 6 Wall. 166; *Mayor* v. *Lord*, 9 id. 409; *Norris* v. *Irish Land Co.*, 8 El. & B. 525; *People* v. *Troy R. R. Co.*, 37 How. Pr. 427; *People* v. *N. Y. C. R. R. Co.*, 28 Hun, 543; 30 id. 78; *People* v. *R. R. Co.*, 24 N. Y. 261, 267, 269; *R. R. Com.* v. *R. R. Co.*, 63 Me. 260; *McCoy* v. *R. R. Co.*, 13 Fed. R. 378; *Talcott* v. *Pine Grove*, 1 Flippin, 145; *R. R. Com.* v. *R. R. Co.*, 13 Fed. R. 3, 7, 8.)   The writ of *mandamus* is a State writ and properly issued on the application of the attorney-general.   (Code of Civ. Pro., §§ 1991, 1993, 2070; Tapping on Man. 54, 56, 288; Moses on Man. 194, 199; *People* v. *Collin*, 19 Wend. 64, 68; *U. P. R. R. Co.* v. *Hall*, 91 U. S. 355; *People* v. *E. R. Co.*, 28 Hun, 554; Laws of 1882, Chap. 353; *N. Y. R. R. Co.*, 74 N. Y. 302, 307; *Candee* v. *Howard*, 37 id. 653; Wood on Man. 56, 111, 114, 115; Addison on Torts, 1486.)   The damage has been a continuing one.   The usurpation of the corporate powers constitutes a continuing cause of action to the people. (*Kellogg* v. *Thompson*, 66 N. Y. 88; *People* v. *Ins. Co.*, 38

Barb. 323 ; *Waldron* v. *Hawkins,* 10 Wend. 167 ; Green's Brice's *Ultra Vires* [7th ed.], 714.)

DANFORTH, J. Upon motion on notice by the attorney-general for a mandamus requiring the defendant to construct and maintain on the line of its road, at the village of Ham-burgh, a building of sufficient capacity to accommodate its passengers arriving at that place, or departing therefrom, or in waiting to depart, and such freight as is usually received at or shipped from that point, it appeared that the village of New Hamburgh contains twelve hundred inhabitants and fur-nishes to the defendant at a station established by it, a large freight and passenger business ; that its depot building is entirely inadequate for these purposes, and the absence of a depot building and warehouse sufficient for the accommoda-tion of passengers and freight has been and continues to be a matter of serious damage to large numbers of persons doing business at that station. These facts were conceded by the defendant. It also appeared that upon complaint made to the railroad commissioners after notice to the defendant, that body adjudged and recommended that the railroad company should construct a suitable building at that station within a time named, but although informed of this determination, the defendant failed to comply or do anything towards complying with it, not for want of means or ability to do so, but because " its directors decided that the interests of the defendant required it to postpone, for the present, the erection or enlarge-ment of the station house or depot at the village of Hamburgh."

The Supreme Court at Special Term granted the motion, and, adopting the language of the railroad commissioners, ordered that the defendant " forthwith construct and main-tain a suitable depot building, of sufficient size and capacity to accommodate passengers arriving and departing on said road at the village of Hamburgh, as well as such passengers as may be in waiting on ordinary occasions to depart from the said village, on the line and by the way of said defendant's road, and of sufficient capacity to accommodate such quantities of

freight as are usually received at said village,. or that may be shipped therefrom, by the way of said New York, Lake Erie and Western Railroad." Upon appeal to the General Term the order, after very careful consideration, was affirmed. The railroad company appeals.

We agree with the court below that at common law the defendant, as a carrier, is under no obligation to provide warehouses for freight offered, or depots for passengers waiting transportation. But that court has found such duty to be imposed by statute. To this we are unable to assent. The question arises upon the construction of the General Railroad Act (Laws of 1850, chap. 140), and its amendments. Under that act many companies have been formed to construct, maintain and operate railroads in a manner so affecting persons and private property as to be utterly indefensible, except upon the theory formulated by the express words of the statute, that the roads, when constructed, should be " for public use in the conveyance of persons and property." To promote that purpose and for that purpose only, such company may take the property of a citizen without his consent (§§ 1, 18), interfere with his travel and transportation by changing the lines of highways as may be desirable, with a view to the more easy ascent or descent of their own road (§ 24), and even appropriate to its purposes the land of a town or county or the State (§ 25). All these and other like powers are justified upon the ground that, when exercised, they are the acts of the government performed indirectly through the medium of a corporate body. It follows, of course, that the legislature has control over it and may compel the exercise of its functions and direct the management of its business and use of the road as in their judgment will best subserve the public interest.

The court below does not find, nor does the respondent claim, that the legislature has at any time, in express and specific terms, imposed upon a railroad company the duty of erecting or maintaining a depot or warehouse. It is sought to be implied. The company is empowered to erect and

maintain all necessary and convenient buildings, stations, etc., "for the accommodation and use of their passengers, freight and business" (id. § 28, subd. 8), and may acquire and hold real estate and other property for these purposes, "as may be necessary to accomplish the object of its incorporation." There are some other provisions in the same direction; none go further than those cited. But from these, and from the circumstance first referred to, that the company is exercising a public trust, and to that cause owes its existence and capacity to enjoy and profit by the franchise it has accepted, it is argued by the respondent that the right to construct a station, and its necessity, carries with it an obligation to do so in a proper manner. In regard to the facts there is no dispute. A plainer case could hardly be presented of a deliberate and intentional disregard of the public interest and the accommodation of the public.

The railroad commissioners have thought that it was essential for those purposes that a new and enlarged building for passengers and freight should be erected. That it is true, was a question for them to decide. The statute (Laws of 1882, chap. 353), created a commission of "competent persons," required from them an official constitutional oath, assigned to them an office for the transaction of business, provided a clerk to administer oaths to witnesses and a marshal to summon them, gave full power of investigation and supervision of all railroads and their condition with reference not only to the security, but accommodation of the public, and declared that whenever, in their judgment, it shall appear, among other things, that any addition to, or change of the stations or station-houses is necessary to promote the security, convenience or accommodation of the public, they shall give notice to the corporation of the improvements and changes which they deem to be proper, and if they are not made, they shall present the facts to the attorney-general for his consideration and action, and also to the legislature. All these things have been done. The commissioners have heard and decided. They can do no more. After so much prelimi-

nary action by a body wisely organized to exercise useful and beneficial functions, it might well be thought unfortunate that some additional machinery had not been provided to carry into effect their decision.   By creating, the statute recognizes the necessity for, such a tribunal to adjust conflicting interests and controversies between the people and the corporation. It has clothed it with judicial powers to hear and determine, upon notice, questions arising between these parties, but there it stops.  Its proceedings and determinations, however characterized, amount to nothing more than an inquest for information.   We find no law by which a court can carry into effect the decision.   At this point the law fails, not only by its incompleteness and omission to furnish a remedy, but by its express provision that no request or advice of the board, " nor any investigation or report made by " it, shall have the effect to impair the legal rights of any railroad corporation. The attorney-general is given no new power.   He may consider the result of the investigation made by the commissioners, and their decision, and so may the company, but we must look further for his right of action, and the corporation, disregarding the judgment of the commissioners, may continue the management of its business in its own way, may determine, in its own discretion, to what extent and in what manner the exercise of a public trust requires it to subserve the " security, convenience and accommodation of the public."

It may say, as in this case, the accommodations we furnish are not sufficient, they are not suitable, the omission to furnish different and better entails injury upon the public, but we will give no better, nor make alterations until we choose.   The railroad commissioners are powerless, and as the law now stands, neither the attorney-general of the State nor its courts can make their order effectual.

Cases are cited by the respondent in support of a different contention.   Some of them turn upon statutory provisions, as do those arising in Connecticut, where the law makes the order of the commissioners effectual by authorizing its enforcement (State v. N. H. & N. R. R. Co., 37 Conn. 153).   Under

our statute the public gain nothing in any legal sense from the determination of the commissioners. It is not .enforceable as a judgment; it is not even a command; if it affects the railroad company at all, it is as advice .merely. It can compel them only through the interposition of the legislature, who may indeed make it effectual by action upon their report, or by some general law, if it be deemed expedient, giving force and efficacy to their determinations.

In the next place, as the duty sought to be imposed upon the defendant is not a specific duty prescribed by statute either in terms or by reasonable construction, the court cannot, no matter how apparent the necessity, enforce its performance by mandamus. It cannot compel the erection of a station-house, nor the enlargement of one. The power of the company to provide such buildings is, under the statutes, a permissive one only. If the corporation choose to exercise it, it may. The statute does not exact it. It specifies certain things which the company shall not do. It specifies many things which it shall do, as, among others, "start and run its cars for the transportation of passengers and property, at regular times, to be fixed by public notice, and furnish sufficient accommodations for the transportation of all such passengers and property as shall, within a reasonable time previous thereto, be offered for transportation at the place of starting and at the junctions of other railroads, and at usual stopping places established for receiving and discharging way passengers and freight for that train, and shall take, transport and discharge such passengers and property at and from and to such places, on the due payment of fare or freight legally authorized therefor, and shall be liable to the party aggrieved, in an action for damages, for any neglect or refusal in the premises," and it must do some other specified things for their accommodation. The statute is peremptory as to many matters, but it nowhere says that for its intending passengers, or waiting freights, cover by building of any kind shall be provided. As to that the statute imports an authority only, not a command, to be availed of at the option of the

company in the discretion of its directors, who are empowered
by statute to manage "its affairs," among which must be
classed the expenditure of money for station buildings or
other structures for the promotion of the convenience of the
public, having regard also to its own interest. With the
exercise of that discretion the legislature only can interfere.
No doubt, as the respondent urges, the court may by man-
damus also act in certain cases affecting corporate matters, but
only where the duty concerned is specific and plainly imposed
upon the corporation.   It was so in *People* v. *D. & C. R.
R. Co.* (58 N. Y. 152), where the defendant was compelled to
restore an invaded highway to its former usefulness — a
statutory duty (Laws of 1850, chap. 140, § 28, subd. 5); so in
*People ex rel. Kimball* v. *B. & A. R. R. Co.* (70 N. Y. 569),
to build a bridge as directed by statute (Laws of 1874,
chap. 648); in *People, etc.,* v. *R. & S. L. R. R.Co.* (76 N. Y.
294), to erect fences as directed by statute (Laws of 1850,
chap. 140). All these cases cited by the learned attorney-
general, and there are many others, go upon the ground above
stated.

Such is not the case before us.  The grievance complained
of is an obvious one, but the burden of removing it can be
imposed upon the defendant only by legislation.   The legisla-
ture created the corporation upon the theory that its functions
should be exercised for the public benefit.   It may add other
regulations to those now binding it, but the court can interfere
only to enforce a duty declared by law.  The one presented in
this case is not of that character.   Nor can it by any fair or
reasonable construction be implied.   The whole subject of
the relation between the company and its passengers and
freightors appears to have been in contemplation of the legis-
lature.   Certain acts towards them as we have seen are made
imperative as duties (§ 36); others, and among them the
erection of stations and buildings, are made possible by per-
mission (§ 28, subd. 8).   We cannot disregard this difference
in language, and give by implication to one phrase the same
force and meaning which the legislature has by express terms

conveyed in the other.    We are constrained, therefore to hold that the appeal must succeed.

The order appealed from should be reversed and the motion denied, with costs.

All concur, RAPALLO, J., in result.

Ordered accordingly.