<hr/>

PEOPLE *ex rel.* SNYDER *v.* SUMMERS *et al.*

*(Supreme Court, General Term, Fifth Department.    April 11, 1890.)*

OFFICE AND OFFICER—APPOINTMENT—UNION SOLDIERS—MANDAMUS.
    Laws N. Y. 1887, c. 464, § 1, provides that honorably discharged Union soldiers shall be preferred in municipal appointments.    Buffalo City Charter, tit. 2, § 50, (Laws N. Y. 1870, c. 519,) provides that the street commissioner, "by and with the advice and consent of the common council," may appoint as many inspectors of streets as the council might authorize.    *Held,* that *mandamus* would not lie to the council to confirm an appointment made by the street commissioner pursuant to the act relating to veterans, where there was no bad faith on the part of the council in rejecting such appointment.

Appeal from special term, Erie county.

Motion for peremptory *mandamus* requiring defendants, the members of the common council of the city of Buffalo, and the street commissioner of that city, to confirm the appointment of relator, John N. Snyder, to the office of inspector of health and streets, which had been made and communicated to the common council by the street commissioner. From an order granting the motion defendants appeal.

Argued before Dwight, P. J., and Macomber, J.

*Frank C. Laughlin*, for appellants.    *A. C. Calkins*, for respondent. .

Macomber, J.   The notice of motion accompanying the petition was that application would be made to the special term of this court for a writ of peremptory *mandamus*, directing the defendant Quinn, as the street commissioner of the city of Buffalo, to certify to the common council the fact that the relator served as a soldier in the war of the Rebellion, and was honorably discharged therefrom; and that thereupon the common council be required to consent to and confirm the appointment of the relator as inspector of health and streets, theretofore made by the street superintendent.   The defendants, other than Quinn, are the members of the common council of the city of Buffalo.   The charter of that city provides, among other things, as follows: "That street commissioner  *  .  *   *   shall, by and with the advice and consent of the common council, appoint an assistant, and   *   *   *   as many inspectors of health and streets as the common council shall authorize."   Section 50, tit. 2, c. 519, Laws 1870.   In pursuance of this provision of the city charter, the common council authorized the appointment of 13 inspectors of health and streets.   Under the rules in respect to the civil service of the state, these inspectors were placed in Schedule B, which made them subject to competitive examinations, in pursuance of section 8, c. 354, Laws 1883, and acts amendatory thereof.   Rule 6, prescribed for the admission of persons into the civil service of the city of Buffalo, is to the effect that every vacancy in Schedule B, not filled by promotion, shall be filled by selection of the six persons who have passed the highest open competitive examinations.   It is there further provided that whenever a vacancy occurs in any position included in Schedule B, not to be filled by promotion, the appointing officer shall notify the civil service commission of such vacancy, whereupon it becomes the duty of such commission to certify to the appointing officer, from the eligible list appropriate to such position, certain persons having the highest standing on such eligible list for appointment.   It is further provided, by the same rules, that the appointing officer shall thereupon appoint to the vacant position one of the persons so certified to him by the commission, and then at once notify the commission of such appointment.   In pursuance of this law and the rules adopted by the civil service commission, the street commissioner notified the civil service commission of these 13 vacancies, and requested the certification to him of the names of the persons eligible to appointment as inspectors of health and streets.   On the 13th day of April, 1888, the civil service commission, pursuant to such request, certified to the street commissioner the names of six persons to fill six of such vacancies, and among the names was that of the relator.   The relator is an honorably discharged Union soldier of the war of the Rebellion, having suffered no physical impairment incapacitating him from the full performance of his duty as such street and health inspector, and has the necessary business capacity for the discharge of the duties of the post for which he, with others, was recommended by the civil service commission.   The street commissioner, on the 11th day of February, 1889, transmitted to the common council the appointment of the relator, with five others, as such inspectors of health and streets, in a communication in writing.   On the 18th day of February, 1889, in pursuance of the report of the committee on streets, to which such appointments had been duly referred for consideration, the common coun-

cil adopted the recommendation of the committee to the effect that the appointment of each and every of these six persons be not confirmed.

By section 1, c. 312, Laws 1884, as amended by chapter 464, Laws 1887, it is provided that, "in every public department, and upon all public works of the state of New York, and of the cities, towns, and villages thereof, and also in non-competitive examinations under the civil service laws, rules or regulations of the same, whenever they apply, honorably discharged Union soldiers and sailors shall be preferred for appointment and employment. Age, loss of limb, or other physical impairment which does not, in fact, incapacitate, shall not be deemed to disqualify them, provided they possess the business capacity necessary to discharge the duties of the position involved." By the second section of the same act, it is enacted that "all officials or other persons having power of appointment to or employment in the public service, as set forth in the first section of this act, are charged with a faithful compliance with its terms, both in letter and in spirit, and a failure therein shall be a misdemeanor." In the petition of the relator there is no charge made against the common council, which would warrant the court to interfere and compel action in his behalf. When the common council received the nomination of the relator and others for the posts of health and street inspectors, it was its duty to consider and act upon the same officially. This was done. There is no provision of law that required that body to approve of the nomination. There is nothing in the petition or affidavit which impugns the good faith of the common council in its vote. It is not a case of contumacy, nor of disregard of the rules prescribed by statute for the civil service. So far as the papers disclose the facts, the vote taken in the common council was fully authorized under the provision of the charter already quoted; and, in the absence of bad faith on its part, the court cannot interfere by this high prerogative writ. *People* v. *Supervisors*, 45 N. Y. 200; *People* v. *Supervisors*, 1 Hill, 362. Had the common council refused to act upon the appointment so made by the street commissioner, and contumaciously ignored the requirements of the statute, the power of this court to compel them to act upon the appointment, but not in any particular way, would be undoubted. It is only upon the refusal of this legislative body to hear and decide upon the appointment so made by the street commissioner that the court would be justified in interfering. The power to approve of the nomination, so made, necessarily implies the right to reject it, for cause. *People* v. *Common Council*, 78 N. Y. 33; *People* v. *Chapin*, 105 N. Y. 309, 11 N. E. Rep. 510; *People* v. *Railroad Co.*, 104 N. Y. 58, 9 N. E. Rep. 856; *People* v. *Leonard*, 74 N. Y. 443; Dill. Mun. Corp. (3d Ed.) §§ 827–832 *et seq.*, and cases there cited. For aught that appears in the case before us, the common council had good reason for rejecting the appointment of the relator and the other five nominees. The matter of the confirmation of the nominations made by the street commissioner was referred to the street committee, upon whose report the council acted. There is nothing in the record to show that this was not the usual and proper parliamentary mode of proceeding, where a deliberative body, having to exercise occasional judicial functions, acts upon the nomination made by an independent power. Had there been made to appear a contumacious refusal of the confirming body to take any action upon the nominations, and thus to disobey the law, a different question would arise; but a discussion thereof has no place, in our judgment, in the consideration of this appeal. As the case stands, we are called upon to usurp from the common council powers which are utterly foreign to judicature, and which belong only to political bodies. No court, however firmly imbedded in the constitution, and whatever its antiquity and traditions, could long maintain its independence amidst this scrimmage for office, if charged with the exercise of such unjudicial functions.

The order appealed from should be reversed.