No. 13,020.

STATE EX REL E. E. SMART ET AL. VS. KANSAS CITY, SHREVEPORT & GULF RAILWAY CO.

SYLLABUS.

A railroad company can not be forced by *mandamus* to establish a depot at a particular place in the absence of a duty having been imposed upon it so to do, either by general laws or by special requirement in their charter.

ON APPEAL from the First Judicial District Court for the Parish of Caddo. *Land, J.*

*J. Henry Shepherd* for Relators and Appellants.

*T. Alexander* for Defendant and Appellee.

Argued and submitted January 26, 1899.
Opinion handed down February 6, 1899.

The opinion of the court was delivered by

NICHOLLS, C. J. The plaintiffs in this case represented in their petition to the court that they were residents of the town of Leesville, parish of Vernon, where many of them owned residences and stores; where many of them had been conducting various occupations as merchants, hotel keepers and mechanics; that they owned their several business and residence houses long before the construction by the defendant of its railway line through the parish of Vernon, and through the town of Leesville, the parish seat of Vernon parish. That in consideration of the public benefit to be derived by the town of Leesville, E. E. Smart, one of the plaintiffs, donated to said railroad the right of way through said town, and petitioners were led to believe by the proper officials of said railway that the said town should have a depot, with proper conveyances, and so located as to furnish proper facilities for the people of Leesville. That it was the duty of said corporation to furnish their town with a convenient and suitable depot, sufficient in capacity for the transaction of railroad business, and so

located as to be accessible and convenient to the business and residents of said town. That this obligation was incumbent on said railroad company by the Constitution and the laws of the State of Louisiana.

That for a period of six months the said corporation stopped its trains, received freight and discharged same, as well as carried passengers, from a switch located within two hundred and thirty yards of the court house of Vernon parish, about the centre of said town. That access to said stopping point was easy, safe and convenient, to the public and the people generally having business in said town of Leesville, and at the court house of Vernon parish. That on the 29th of January, 1897, the said corporation, through its right of way agent, purchased forty acres of land adjacent to the town, had the same surveyed and platted into town lots, and built a depot thereon one-half mile from the court house; that the said depot is located in a swamp inaccessible to the public, and imposes extra expense on passengers going to and from said town of Leesville to said depot. That it is with extreme difficulty goods are hauled to and from said depot, owing to the almost impassible condition of the road leading from the town to the same, the ground being of marshy character, and quicksands underlying part of the road. That access to said depot to secure freight was difficult and expensive, and the public were greatly inconvenienced thereby; that an additional expense was imposed on the people of Leesville in order to transact business with said railroad company, which was an unnecessary and grievous burden, because said company could furnish safe, convenient, and easy access to the public and people of Leesville by locating a depot in said town and continuing to serve the public as they began. That the said corporation, in total disregard of the Constitution of the State and its charter of incorporation, had engaged in the business of buying and selling real estate in said parish of Vernon, and that the purchase of said forty acres of land was not incidental nor necessary to its business as a common carrier. That said depot was located, not in the interest of the public or for the convenience of its business as a railroad, but for the sole purpose of making large profits on the land purchased; that said company, through its land commissioner, was seeking to secure the removal of the court house, which stands where it has been convenient to the people of Vernon, on high ground, and surrounded by the buildings of the merchants, mechanics and residents of said town, and said commissioner had offered one thousand dollars

and one acre of ground for its removal to the centre of the company's tract of land, but a half a mile distant from the present court house, all for the sole purpose of aiding said corporation to carry on its land speculations and make profitable its real estate investment in land, not necessary nor incidental to its business as a common carrier, which it was illegally conducting.

That its agents and employees were actively engaged in circulating petitions to the police jury of Vernon parish to order an election for the removal of the court house one-half mile distant to a low, marshy, thicket, where the corporation was then selling lots by reason of its locating its depot on said tracts; that prior to said location it was an uninhabited tract of forest swamp. That the said acts of the corporation would render valueless a large amount of property in residences and business houses belonging to the relators, and practically compelling them to remove to close proximity to said depot as then located, and solely to advance the illegal and selfish real estate speculation of the officer of said corporation, and that said corporation was so conducting its business near the town of Leesville by locating its depot at a remote distance from said town, and refusing to furnish adequate and sufficient depot facilities for the general public in said town and vicinity as to infringe on the equal rights of individuals and the general well being of the State.

That said acts of said corporation in locating their depot one-half mile from said town, and refusing to furnish a depot for the general public's convenience in said town, although passing immediately through it, was illegal and to the great injury of petitioners, and that for said injury the law had assigned no relief by the ordinary means, and that in order to maintain their rights and that of the public it was necessary that a writ of *mandamus* issue on relator's behalf, ordering and commanding said corporation to furnish them and the public generally of the town of Leesville, suitable, adequate and accessible depot facilities, at which the public business of said town can be conducted with comfort and with regard to the rights and general convenience of the public, without the oppressive, expensive, and extremely difficult method occasioned by the remote and inconvenient location which was solely in the interest of the sale of town lots, and not in the interest of the public. Their prayer was that the corporation establish a depot in the town of Leesville which would give the people of said town accessible, adequate, and suitable facilities for the·

Smart vs. Kansas City, Shreveport & Gulf R. R. Co.

transaction of freight and passenger business with the said corporation.

The defendant filed an exception of no cause of action, which the District Court sustained and dismissed plaintiffs' suit.    They appealed.

In its reasons for judgment the District Court said: "The petition sets forth no contract or agreement binding the defendant to maintain a station in Leesville, but alleges that such is the obligation of the company under the Constitution and laws of the State.

The court has been referred to no law or decision of this State which makes it the duty of a railroad company to establish stations at or near the county seat of the parish, or in every town or village which its line may traverse.    It is not alleged that Leesville is an incorporated town, and it may be assumed that it is a village without fixed limits in which the court house of the parish is located.

It is admitted that the station of the defendant corporation is not more than one-half mile from the court house, and the object of this suit is to compel the erection of a depot, side tracks, etc., at a point nearer to the court house, say two hundred and thirty yards distant threrefrom.

In State *ex rel.* New Orleans vs. Railroad Company, 37 An. 589, our Supreme Court held that the writ of *mandamus* does not lie to compel corporations to perform obligations arising from a contract, and that it can be invoked only to compel the performance of some clear, unequivocal duty imposed by law.

By Act 133, of 1888, it was provided that when a corporation is bound by contract, or otherwise, to any parish or corporation with reference to the paving, grading, repairing, reconstructing or care of any street, highway, bridge, culvert, levee, canal, ditch, or crossing, and shall fail or neglect to perform said contract or obligation, the parish or municipal corporation shall have the right to proceed by *mandamus*.

In State *ex rel.* City of New Orleans vs. New Orleans & Northeastern Railroad Company, 42 An. 138, our Supreme Court held that Act 133, of 1888, extended the remedy of *mandamus* to matters and things not hitherto included in its scope, and must be strictly construed.

If there is no law of this State imposing a clear and unequivocal duty on defendant to establish a station in Leesville, the *mandamus*

will not lie, however reprehensible may have been the motive and actions of the corporate authorities."

### OPINION.

Though the fact is not directly stated in plaintiffs' petition, we understand them to charge that the defendant company after having, during a period of six months, stopped its trains, and received and discharged freight, and received and delivered passengers from a switch located within two hundred and thirty yards of the court house of Vernon parish, about the centre of said town, had illegally and improperly discontinued said service. That it had done so from the selfish and improper motive of furthering its own interests in the sale of lots upon a tract of land which it had bought for speculation in violation of the Constitution of the State.

Plaintiffs do not allege that defendant had ever established a depot at Leesville, nor do they allege, if the service at that place (such as it was) was discontinued, that a demand for its resumption was made and refused. The relief which they seek at our hands is not the resumption of the discontinued service at the place referred to, and the replacing of the switch, if it had been removed, but the "establishment by the defendant company of a depot in the town of Leesville which would give the people of said town accessible and suitable facilities for the transaction of freight and passenger business with said corporation." Plaintiffs do not question the right of the company to establish depots at points other than Leesville, whether far or near, nor do they ask that the depot which the company has established on its ground be removed to Leesville.

Plaintiffs ask at our hands no action looking to the prohibiting of the further sale, by the defendant, of lots of ground on real estate which it had purchased and was dealing with in violation of the Constitution. The allegations on that subject, we presume, were inserted simply in aid of the limited relief sought by showing bad faith in the company in discontinuing business in the town. If true it be that the defendant is violating the provision of Art. 236, of the Constitution, by "engaging in business other than that expressly authorized in the charter, or incidental thereto," and relators are injured and prejudiced thereby, they are not without remedy, as the Attorney General, on his attention being called to that fact with official action requested at his

hands would, beyond doubt, bring the authority of the State to bear in the premises.

On the argument of the case our attention was directed to the allegation that "E. E. Smart (one of the plaintiffs), donated to the defendant company the right of way through the town, in consideration of the public benefit to be derived by the town of Leesville, and petitioners were led to believe by the proper officials of said railway company that the said town should have a depot with proper precautions, and so located as to furnish proper facilities for the people of Leesville."

This averment falls short of showing any promise or engagement to that effect by the corporation, or of showing any misrepresentation on its part by which petitioners were led to take action of any kind. The allegation is of too vague and uncertain a character to base upon it any claim of estoppel, contract or engagement.

As matters stand the only question before us is whether, as a matter of law, the plaintiffs have the right, through *mandamus,* to force the defendant to establish a depot at Leesville. The Supreme Court of the United States was called upon to consider this question in Northern Pacific Railroad vs. Dustin, 142 U. S. 198, under a state of facts very similar to those alleged by the plaintiffs in their petition. The facts of that case, as shown by the report of the court's opinion, were that "the Northern Pacific Railroad at one time stopped its trains at Yakima City, but never built a station there, and after completing its road four miles further to North Yakima, established there a freight and passenger station. That North Yakima was a town laid out by the defendant on its own unimproved land. That after having established this depot, defendant ceased to stop its trains at Yakima City. In consequence, apparently of this, Yakima City which, at the time of the filing of the petition for *mandamus,* was the most important town in poulation and business in the country, rapidly dwindled, and most of its inhabitants removed to North Yakima, which at the time of the verdict had become the largest and most important town in the county. The defendant could build a station at Yakima City, but the cost of building one would be eight thousand dollars, and the expense of maintaining it one hundred and fifty dollars a month, and the earnings of the whole of this division of the defendant's road are insufficient to pay the running expenses.

There were other stations for receiving freight and passengers

between Yakima and Pasco Junction, which furnished sufficient facilities for the country south of North Yakima which included Yakima City, and the passenger and freight traffic of the people living in the surrounding country, considering them as a community, would be better accomodated by a station at North Yakima than by one at Yakima City. After the verdict, and before the District Court awarded the *mandamus*, the county seat was removed by the territorial legislature from Yakima City to North Yakima."

In discussing the question the Supreme Court of the United States declared that "a writ of *mandamus* to compel a railroad corporation to do a particular act in constructing its road or buildings, or in running its trains, can be issued only when there is a specific legal duty on its part to do that act, and clear proof of that duty. If, as in Union Pacific Railroad vs. Hall, 91 U. S. 343, the charter of a railroad company expressly requires it to maintain its railroad on a continuous line, it may be compelled to do so by *mandamus*."

"So if the charter requires the corporation to construct its road and run its cars to a certain point on tide water (as was held to be the case in State vs. Hartford & New Haven Railroad, 29 Conn. 536), and it has so constructed its road and used it for years, it may be compelled to continue to do so. And *mandamus* will lie to compel a corporation to build a bridge in accordance with an express requirement of statute. New Orleans Railway vs. Mississippi, 112 U. S. 12; People vs. Boston & Albany Railroad, 79 N. Y. 569. But if the charter of a railroad corporation simply authorizes the corporation, without requiring it to construct and maintain a railroad to a certain point, it has been held that it can not be compelled by *mandamus* to complete or maintain its road to that point when it would not be remunerative. York & North Midland Railway vs. The Queen 1 El. & Bl. 558; Great Western Railway vs. The Queen, 1 El. & Bl. 874; Commonwealth vs. Fitchburg Railroad, 12 Gray 180; State vs. Southern Minnesota Railroad, 18 Minn. 40."

"The difficulties in the way of issuing a *mandamus* to compel the maintenance of a railroad and the running of trains to a terminus fixed by the charter itself, are much increased when it is sought to compel the corporation to establish, or to maintain a station, and to stop its trains at a particular place on the line of its road. The location of stations and warehouses for receiving and delivering passengers and freight involves a comprehensive view of the interests of the

public as well as of the corporation and its stockholders, and a consideration of many circumstances concerning the amount of population and business at or near, or within convenient access to one point or another, which are more appropriate to be determined by the directors, or, in case of their abuse, by the legislature, or by administrative boards, entrusted by the legislature with that duty, than by the ordinary judicial tribunals."

Referring to the case directly before it, the court said: "To hold that the directors of this company, in determining the number, place and size of its stations and other structures having regard to the public convenience as well as its own pecuniary interests, can be controlled by the courts by writ of *mandamus,* would be inconsistent with many decisions of high authority in analogous cases."

The court cited a number of decisions bearing upon the question at issue, among others that of Atchison, Topeka & Sante Fe Railroad vs. Denver & New Orleans Railroad, 110 U. S. 667; 681; 682, in which Chief Justice Waite, in delivering his opinion, said: "No statute requires that connecting roads shall adopt joint stations, or that one railroad shall stop or make use of the station of another. Each company in the State has the legal right to locate its own stations, and, so far as statutory regulations are concerned, is not required to use any other. A railroad company is prohibited, both by common law and by the Constitution of Colorado, from discriminating unreasonably in favor of or against another company seeking to do business on its road, but that does not necessarily imply that it must stop at the junction of one and interchange business there because it has established joint depot accomodations and provided facilities for doing a connecting business with another company at another place. A station may be established for the special accommodation of a particular customer, but we have never heard it claimed that every other customer could, by a suit in equity, in the absence of a statutory or contract right, compel the company to establish a like station for his special accommodation at some other place. Such matters are and always have been proper subjects for the legislative consideration unless prevented by some charter · contract, but as a general rule remedies for injustice of that kind can only be obtained from the legislature. A court of chancery is not any more than a court of law clothed with legislative power."

The court quoted approvingly from People vs. New York, Lake

Erie & Western Railroad Company, 104 N. Y. 58, 66, 67, in which the Court of Appeals refused to grant a *mandamus* to compel a railroad corporation to construct and maintain a station and warehouse of sufficient capacity to accommodate passengers and freight at a village containing twelve hundred inhabitants, and furnishing to the defendant at its station therein a large freight and passenger business, although it was admitted that its present building at that place was entirely inadequate; that the absence of a suitable one was a matter of serious damage to a large number of persons doing business at that station; that the railroad commissioners of the State, after notice to the defendant, had adjudged and recommended that it should construct a suitable building there within a certain time, and that the defendant had failed to take any steps in that direction, not for want of means or ability, but because its directors had decided that its interests required it to postpone doing so.

The court, speaking by Judge Danforth, while recognizing that "a plainer case could hardly be presented of a deliberate and intentional disregard of the public interest and the accommodation of the public," yet held that it was powerless to interpose, because the defendant, as a carrier, was under no obligation, at common law, to provide warehouses for freight offered, or station houses for passengers waiting transportation, and no such duty was imposed by the statutes authorizing companies to construct and maintain railroads "for public use in the conveyance of persons and property," and "to erect and maintain all necessary and convenient buildings and stations" for the accommodation and use of their passengers, freight and business, and, because, under the statutes of New York the proceedings and determinations of the railroad commissioners amounted to nothing more than an inquest for information, and had no effect beyond advice to the railroad company and suggestion to the legislature, and could not be judicially enforced.

The court said: "As the duty sought to be imposed upon the defendant is not a specific duty prescribed by statute, either in terms or by reasonable construction, the court can not, no matter how apparent the necessity, enforce its performance by *mandamus*. It can not compel the erection of a station house, nor the enlargement of one. As to that the statute imports an authority only, not a command, to be availed of at the option of the company in the discretion of its directors who are empowered, by statute, to manage 'its affairs,'

Smart vs. Kansas City, Shreveport & Gulf R. R. Co.

among which must be classed the expenditure of money for station-buildings or other structures for the promotion of the convenience of the public having regard to its own interest. With the exercise of that discretion the legislature only can interfere. No doubt, as the respondent urges, the court may by *mandamus* also act in certain cases affecting corporate matters, but only where the duty concerned is specific and plainly imposed upon the corporation."

"Such is not the case before us. The grievance complained of is an obvious one, but the burden of removing it can be imposed upon the defendant only by legislation. The legislature created the corporation upon the theory that its functions should be exercised for the public benefit. It may add other regulations to those now binding it,. but the court can interfere only to enforce a duty declared by law. The one presented in this case is not of that character. Nor can it by fair or reasonable construction be implied."

The *mandamus* in North Pacific Railroad vs. Dustin was refused, though presented in the name of the territory on the relation of its prosecuting attorney. The *mandamus* in the case at bar was presented in the name of private individuals whose special interest in the subject matter as differing from that of the public at large and giving them a right to stand in judgment might be questioned. No issue was made, however, upon that point in the briefs or argument.

In Southeastern Railway vs. Railway Commissioners, a railway company was held by Lord Chancellor Selborne, Lord Chief Justice Coleridge, and Lord Justice Brett, in the English Court of Appeal, to be under no obligation to establish stations at any particular place or places, unless it thought fit to do so, and was held bound to afford improved facilities for receiving, forwarding and delivering passengers and freight at a station once established and used for the purpose of traffic, only so far as it had been ordered to afford them by the railway commissioners within powers expressly conferred by act of Parliament (62 B. D. 586, 592).

The decisions in Northern Pacific Railroad Company vs. Dustin, and in People vs. New York, Lake Erie & Western Railroad, 104 N. Y. 58, 66, 67, were, in our opinion, based upon correct principles which should and must control the present case.

For the reasons herein assigned it is ordered, adjudged and decreed, that the judgment of the District Court be affirmed, without prejudice.