CHICAGO, INDIANAPOLIS & LOUISVILLE RAILWAY COMPANY *v.* SOUTHERN INDIANA RAILWAY COMPANY.

[No. 4,615.  Filed April 6, 1904.  Rehearing denied June 24, 1904. Transfer denied June 7, 1906.]

1. MONOPOLIES.—*Validity.*—The policy of the law is to prevent the creation of monopolies and to foster fair competition. p. 238.

2. CONTRACTS. — *Monopolies.* — *Public-Service Corporations.*—A contract between public-service corporations, creating a monopoly, is void.  p. 238.

3. SAME.—*Monopolies.*—*Validity.*—*Burden of Showing.*—*Prima facie* a monopolistic contract is invalid, the burden of showing it to be valid being upon the party claiming thereunder.  p. 239.

4. SAME.—*Railroads.*—*Depots.*—*Sidings.*—*Switches.*—*Freight.*— While a railroad company has the right to purchase lands for a right of way, location of depots and sidings, and is bound to carry freight offered at such depots and stopping places, such company cannot legally contract not to establish a depot, siding or switch at a particular place.  p. 239.

5. SAME.—*Ultra Vires.*—*Illegal.*—*Retention of Benefits.*—*Estoppel.*—The doctrine that a public-service corporation cannot retain the benefits of an *ultra vires* contract and deny the validity thereof does not apply to contracts forbidden by statute or those contrary to public policy.  p. 240.

6. SAME. — *Indivisible.* — *Partly Invalid.*—Indivisible contracts, partly illegal, and divisible promises, partly illegal, made for indivisible considerations, are wholly void.  p. 241.

7. SAME.—*Invalid.*—*Executory.*—*Executed.*—*Relief.*—The court will not interfere at the suit of either party to an invalid executory contract, but will leave the parties to a partly or wholly executed contract where they have placed themselves.  p. 242.

Chicago, etc., R. Co. *v.* Southern Ind. R. Co.—38 Ind. App. 234.

8. CONTRACTS.—*Indivisible.*—*Suit to Enforce Legal Part.*—A suit cannot be maintained to enforce the legal provisions of an invalid, indivisible contract. p. 243.

9. SAME.—*Invalid.*—*Enforcement of Valid Part.*—The court will not enforce the valid provisions of an invalid, indivisible contract and wait for the decision upon the invalid parts thereof until plaintiff affirmatively asks relief on such provisions. p. 244.

10. SAME.—*Consideration.*—*When May Be Contradicted.*—The consideration of a contract cannot be varied by parol when it is made contractual. p. 245.

11. SAME.—*Construction.*—*Intention.*—Where the intention of the parties to a contract is clear from the language, it prevails and construction is unnecessary. p. 246.

12. SAME.—*Monopolies.*—*Railroads.*—A contract by which one railroad company restricts its right to compete with another, in consideration of its being permitted to lay its tracks across the tracks of such other, is void. p. 246.

From Lawrence Circuit Court; *W. H. Martin,* Judge.

Suit by the Chicago, Indianapolis & Louisville Railway Company against the Southern Indiana Railway Company. From a decree for defendant, plaintiff appeals. *Affirmed.*

*E. C. Field* and *H. R. Kurrie,* for appellant.

*F. M. Trissal* and *Brooks & Brooks,* for appellee.

ROBY, J.—Demurrers were sustained to each of the three paragraphs of appellant's complaint, and the correctness of such action is the question for decision.

A written contract, executed by the Louisville, New Albany & Chicago Railway Company, as the party of the first part, and by the Evansville & Richmond Railway Company, as party of the second part, is filed with each paragraph and forms the basis for the relief prayed, which in the first and second paragraphs is specific performance of the contract, and in the third, judgment for the reasonable cost of constructing the interlocking switch specified therein. The averments are made that appellant succeeded to the rights of the Louisville, New Albany & Chicago Railway Company, and that appellee holds the title of the

Evansville & Richmond Railway Company, and that the one has the right to enforce, and the other is bound by, the contract in question. This is not controverted, so that the rights of the parties will not be different from what they would be had the agreement between them been originally, and the terms "first party" and "second party," when used in this opinion, will be used as applicable to appellant and appellee respectively.

The contract made on July 29, 1889, in terms grants to the second party the right to construct and operate its railroad over and across the main track and switches owned by the first party, at a designated distance north of the Bedford telegraph office, upon certain specified conditions, which the second party bound itself to perform. The substance of these conditions was that the second party should furnish all material and perform all labor necessary to raise a certain switch track belonging to the first party, to furnish all material and perform all labor incident to the construction and maintenance of the crossing, including an interlocking switch and signal system. In event that the first party should thereafter wish to construct additional tracks, it agreed to adopt its own tracks thereto and pay one-half of the expense of whatever else (frogs, signals, etc.) might be necessary to make the crossing safe. It was further stipulated that proper appliances were to be used in such improvement, and that employes performing service at said crossing should be subject to removal at the demand of the first party. The second party bound itself to hold the first party harmless from cost and damage resulting from the construction or the use of said crossing. The concluding clauses of the contract were of the tenor following:

"Sixth. The second party agrees not to run any track or tracks to or from any stone-quarry which is connected with the road of the first party, by switches or tracks built thereto by said first party or under contract therefor, and will not make any demands for

MAY TERM, 1906.　　237

Chicago, etc., R. Co. *v.* Southern Ind. R. Co.—38 Ind. App. 234.

the use of said first party's tracks or switches leading to any such quarries, for the shipment of stone therefrom, the express purpose of this clause being to preserve to said first party all rights and benefits now acquired in the business of such quarries; and it is hereby expressly understood and agreed that the consideration for granting the rights and privileges herein expressed to said second party is the covenant and agreement of said second party not in any manner, directly or indirectly, to interfere with or divert the benefits now derived or to be hereafter derived from said first party's connection and business with such quarries.

Seventh. In consideration of making a Y connection, it is agreed between the parties hereto that in case any party or parties require said first party to forward stone or other car-load freight to the line of the second company, it is agreed that the proportion of the through rate from any given quarry or station accruing to the party of the first part shall not be less than three cents per hundred pounds."

By clause sixth the second party agreed not to run any track into any stone-quarry connected by switches or tracks with the road of the first party, and not to demand the use of such tracks for the shipment of stone; "the express purpose of this clause being to preserve to said first party all rights and benefits now acquired in the business of such quarries." The concluding portion of the clause contains a further agreement by the second party not "directly or indirectly to interfere with or divert the benefits now derived or to be hereafter derived from said first party's connection and business with such quarries." This clause clearly states the purpose for which it is drawn. Its effect, and its intended effect, is to deprive a class of citizens, engaged in a certain business, of advantages that might accrue to them from the facilities afforded them for the shipment of their merchandise over a competing railroad.

By this agreement the two railroad companies undertook to contract away the rights of third parties, without their

238 APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. v. Southern Ind. R. Co.—38 Ind. App. 234.

knowledge, and in defiance of the public duty devolved upon such companies. That the contracting parties were conscious of the quality of such undertaking is indicated by the seventh clause of the contract, where, in case "any party or parties require said first party to forward stone * * * to the line of the second party," then irrespective of distance, at least three cents per hundred pounds must be paid first party for its share of the through rate; a stipulation, the effect of which is to deprive the shipper of the benefits of competition, should he demand that the second party discharge its public duty by furnishing transportation facilities to him. The policy of the law is to prevent the creation of monopolies and to foster fair competition. *Eel River R. Co. v. State, ex rel.* (1900), 155 Ind. 433; *Indianapolis Union R. Co. v. Dohn* (1899), 153 Ind. 10, 45 L. R. A. 427, 74 Am. St. 274; *State, ex rel., v. Portland Nat. Gas Co.* (1899), 153 Ind. 483, 53 L. R. A. 413, 74 Am. St. 314; *Board, etc., v. LaFayette, etc., R. Co.* (1875), 50 Ind. 85; 2 Elliott, Railroads, §359.

"A contract between corporations charged with a public duty, such as that of common carriers, providing for the formation of a combination having no other purpose than that of stifling competition, and providing means to accomplish that object, is illegal. The purpose to break down competition poisons the whole contract, and there is here no antidote which will rescue it from legal death." *Cleveland, etc., R. Co. v. Closser* (1890), 126 Ind. 348, 361, 9 L. R. A. 754, 22 Am. St. 593. The important thing to be secured was, the court declared in the case above cited, a sound and salutary general principle, and not merely cases with closely resembling facts. The principle declared, as heretofore quoted, accords with the necessities of commerce and development, and is supported by a vast volume of authority, including the following: *Louisville, etc., R. Co. v. Sumner* (1886),

MAY TERM, 1906. 239

Chicago, etc., R. Co. *v.* Southern Ind. R. Co.—38 Ind. App. 234.

106 Ind. 55, 59, 55 Am. Rep. 719; *St. Louis, etc., R. Co.* v. *Mathers* (1874), 71 Ill. 592, 22 Am. Rep. 122; Greenhood, Public Policy, p. 626; *Kettle River R. Co.* v. *Eastern R. Co.* (1889), 41 Minn. 461, 43 N. W. 469, 6 L. R. A. 111; *West Va. Trans. Co.* v. *Ohio River, etc., Co.* (1883), 22 W. Va. 600, 626, 46 Am. Rep. 527.

It is contended in argument that it was competent to make the contract in question, in order to prevent destructive competition. There is no basis of fact 3. justifying the proposition. A combination between common carries to prevent competition is *prima facie* illegal. "The burden is on the carrier to remove the presumption, and until it is removed the agreement goes down before the presumption, and the agreement must be held to be within the condemnation directed against all contracts which violate public policy." *Cleveland, etc., R.* v. *Closser, supra,* at page 360. And see *State, ex rel.,* v. *Portland Nat. Gas Co., supra.*

The appellee railroad company has power, by the provisions of the statute, to purchase, receive and take such lands as may be necessary to the construction and 4. maintenance of its railroad, stations, depots and other accommodations necessary to accomplish the objects for which the corporation was created. §5153 Burns 1901, §3903 R. S. 1881. The statute also makes it the duty of railroad corporations to furnish sufficient accommodations for the transportation of all such persons and property as shall, within a reasonable time previously thereto, offer or be offered for transportation at the place of starting, at the junctions of other railroads and at sidings and stopping places established for receiving way pas-. sengers and freight. §5185 Burns 1901, §3925 R. S. 1881. It has frequently been adjudged that contracts of a railroad company, by which it undertakes not to locate stations or depots within prescribed limits, are contrary to public policy and void. *Louisville, etc., R. Co.* v. *Sumner,*

240 APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. v. Southern Ind. R. Co.—38 Ind. App. 234.

*supra; St. Joseph, etc., R. Co.* v. *Ryan* (1873), 11 Kan. 602, 15 Am. Rep. 357; *Florida, etc., R. Co.* v. *State, ex rel.* (1893), 31 Fla. 482, 13 South. 103, 34 Am. St. 30, 20 L. R. A. 419; *Elkhart County Lodge* v. *Crary* (1884), 98 Ind. 238, 49 Am. Rep. 746. The analogy between an agreement not to furnish facilities for transportation by the location of depots, and an agreement not to furnish facilities for transportation by the location of certain side-tracks, is exact.

No question of the exercise of the right of eminent domain is involved in this appeal. It is not even shown that it would be necessary to condemn or purchase any land in order to reach the stone-quarries that are presumably within reach of appellee's railroad. So far as facts are shown, its right of way may abut upon any number of quarries, in the output of which not only the owners but the purchasing public are interested, both as to price and delivery. If sidings were in existence connecting appellee's railroad with such quarries, it would be bound to receive and transport freight there offered to it. To disable itself, by contract with a competing carrier, from constructing such siding, is something it cannot be allowed to do. The siding is as essential to the proprietor of the stone-quarry, in the transportation of his commodity, as the station or depot is to him who wishes to take passage himself or to ship lighter merchandise. The agreement made by the second party to this contract, as specified in clause six, is within the reason of the law and the authorities. It is therefore illegal.

Appellant, however, contends that, even if the contract be declared *ultra vires,* the second party to it, having acquired the right to cross its tracks, and having crossed them, will be required to make compensation upon the established principle that a corporation may not retain the benefit received under an *ultra vires* contract and at the same time set up its own want of power

to contract. The difficulty with the application of this doctrine is that the undertaking is not *ultra vires* in the strict sense, but it is illegal and absolutely void. "The doctrine does not apply to contracts where the same are forbidden by statute or are contrary to public policy." *Franklin Nat. Bank* v. *Whitehead* (1898), 149 Ind. 560, 39 L. R. A. 725, 63 Am. St. 302.

"If a promise to do several acts is indivisible, and is in part illegal, it cannot be enforced as to that part which is legal, but the whole agreement is void. \* \* \*

6. Where the agreement consists of one promise made upon several considerations, some of which are bad and some good, here, also, the promise is wholly void, for it is impossible to say whether the legal or the illegal portion of the consideration most affected the mind of the promisor, and induced his promise." Clark, Contracts, p. 472.

Where an action was brought upon a note, part of the consideration of which was an agreement that the makers should have the exclusive right to carry policies of marriage benefit insurance upon the payee and his intended, the contract was held to be entire and unenforceable. *James* v. *Jellison* (1884), 94 Ind. 292, 48 Am. Rep. 151. The authorities sustaining the propositions stated are too numerous to require citation. The doctrine is as thoroughly settled and its principle is as wholesome as any known to the law. *Higham* v. *Harris* (1886), 108 Ind. 246; *Ricketts* v. *Harvey* (1886), 106 Ind. 564; *Rainbolt* v. *East* (1877), 56 Ind. 538; *Douthart* v. *Congdon* (1902), 197 Ill. 349, 64 N. E. 348; Bishop, Contracts (2d ed.), §487.

In *Hunter* v. *Pfeiffer* (1886), 108 Ind. 197, an agreement was made by a number of parties to enter into a partnership in the construction of a public work. The plaintiff based his right to recover upon a breach of such contract of partnership. The action was apparently in-

242    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. v. Southern Ind. R. Co.—38 Ind. App. 234.

offensive, but facts were stated in the pleadings from which the court inferred that one of the reasons for making the partnership contract was a desire to prevent competition in bidding upon the public work. Recovery was refused. The opinion, written by Judge Mitchell, is most direct. It is said therein: "The whole purpose of the statute is to encourage open, fair competition between responsible bidders, and any secret combination, call it partnership or anything else, the effect of which is to abate honest rivalry or prevent fair competition, is to be condemned as violative of public policy, and void. No one can predicate an enforceable right upon such an agreement."

The appellant is seeking to enforce a contract illegal in itself. The law will refuse to lend its aid to that end. Executory, it will interfere at the suit of neither 7. party; executed in whole or in part, it leaves the parties where they have placed themselves. *Terre Haute Brewing Co.* v. *Hartman* (1898), 19 Ind. App. 596; *Woodford* v. *Hamilton* (1894), 139 Ind. 481; *Hutchins* v. *Weldin* (1888), 114 Ind. 80; *Schmueckle* v. *Waters* (1890), 125 Ind. 265.

It makes no difference that the whole consideration was not in itself illegal. In *Kain* v. *Bare* (1892), 4 Ind. App. 440, the note in suit had been given for Bohemian oats, and the contract calling for the sale of other oats was held to be a gambling contract, and therefore illegal as against public policy. This court then said: "The fact that the answer concedes the oats to have been of some value is used as an argument by appellant's counsel in favor of the position that the consideration not being wholly illegal, the answer is but a partial response to the complaint when it attempts to meet all, and is therefore bad. If the answer sought to avoid the contract on account of fraud, the appellant's position would be sound, as this court has decided. *Regensburg* v. *Notestine* [1891], 2 Ind. App. 97. But where the entire contract is illegal and void, from public

policy, the courts will not lend themselves to the enforcement of any part of it. *Schmueckle* v. *Waters* [1890], 125 Ind. 265."

If the action were brought by the appellee under the contract to enforce its right to the crossing, questions involved would be presented exactly as in an action on a promissory note given in consideration of two agreements, one legal and one illegal, as in *James* v. *Jellison, supra*. No one could then say that the consideration for the contract, enforcement of which is asked, was not tainted, and no one could tell what part of the engagement depended upon the illegal part thereof.

In *Edwards County* v. *Jennings* (1896), 89 Tex. 618, 35 S. W. 1053, the commissioners of a county granted an exclusive right to lay pipe, etc., in the streets of a town, and agreed to pay $3,500 in consideration of the erection of a water-works system in said town. The grant of an exclusive franchise was, under the laws of the state, illegal. The court refused to separate the parts of the consideration, saying that it was impossible to determine how much of the contractor's obligation was based upon the illegal part of the consideration.

Does the fact that the crossing has been made, and that the action is to recover that part of the consideration, not in itself illegal, render the contract divisible and enforceable? The answer, upon principle, is that neither divisibility nor illegality depends upon the form of the action, or which party happens to be plaintiff. The question, however, is settled by the authorities.

In *Indiana, etc., R. Co.* v. *Koons* (1886), 105 Ind. 507, a written contract was considered by which Koons conveyed to the railroad a right of way over his land, it agreeing in return to fence the right of way and also to build certain cattle-guards. The action was brought to recover the reasonable cost of the fences, which, it was averred, the company had failed to build. The defense was that in a prior

action Koons had recovered judgment for $40 on account of the failure of the company to build cattle-guards. The Supreme Court held that the contract was entire and indivisible, and that, notwithstanding no recovery had been sought or had in the prior action, on account of the failure to fence, there could be none in a latter one, in the absence of stipulations making the dates of performance separate and different. *Indiana, etc., R. Co.* v. *Koons, supra.* The contract considered by the court in that case, the conclusion stated, and the reason therefor, render the case an authority in this one, and compel the conclusion that the contract now under consideration is an entire contract. Being entire for one purpose, it is entire for all purposes.

When a mortgage secures two notes, one valid and one illegal, or a bill of goods consists of various items, a specific price being fixed to each item, and in other similar cases, a different rule applies; but in the case at bar it must be held in the language of Judge Elliott: "If the promissory notes which constituted the cause of action upon which the plaintiff must recover, or not recover at all, were founded on an illegal consideration, then, no matter what the court may have instructed upon the subject of an executed consideration, the verdict is right. The defense which the answers to the interrogatories reveal renders a recovery by the plaintiff legally impossible. It cuts up his cause of action 'root and branch.' * * * The first instruction asked by appellant was properly refused. If the consideration of a promissory note is in part illegal and in part legal, and is indivisible, there can be no recovery upon the note." *Ricketts* v. *Harvey* (1886), 106 Ind. 564.

The present action is one in which it is not only appropriate for the court to consider the contract made by these parties, but the duty of the court to the public, against whom the contract in question is directed, calls upon it to do so.

Chicago, etc., R. Co. *v.* Southern Ind. R. Co.—38 Ind. App. 234.

That duty cannot be put aside until appellant comes into court asking that the illegal clause be enforced. The presumption is that it will not need ever to do this. It cannot be deferred until some quarry man or citizen institutes a proceeding to declare its invalidity. The fallacy of such an idea can in noway be so clearly exposed as by an illustration, extreme in terms, but equivalent in principle. Preliminary to the illustration, it may be recalled that this court has declared: " 'It is now settled here, that contracts which are void at common law, because they are against public policy, like contracts which are prohibited by statute, are illegal as well as void. They are prohibited by law because they are considered vicious, and it is not necessary to impose a penalty in order to render them illegal.' " *Nave* v. *Wilson* (1895), 12 Ind. App. 38.

If, in consideration of property conveyed or delivered, one should contract to pay money and commit crime—larceny, burglary or robbery—would any enlightened conscience entertain the idea that the vendor could recover the money consideration in court and that the illegality of the undertaking could only be set up when the crime was being consummated, and then by the unsuspecting victim? If it were to be assumed that the contract in question contains no express stipulation preventing the separation of the valid from the illegal portion of the consideration, the principle stated by the authority heretofore cited would forbid the courts from making such division.

The stipulations of the written contract make it impossible in any view that might be taken. It is premised that the consideration of a written contract may be made contractual, and that it can then no more be varied than any other portion of the instrument. *Pennsylvania Co.* v. *Dolan* (1893), 6 Ind. App. 109, 51 Am. St. 289; *Stewart* v. *Chicago, etc., R. Co.* (1895), 141 Ind. 55.

The intention of the parties controls. "Where the inten-

246    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. *v.* Southern Ind. R. Co.—38 Ind. App. 234.

tion clearly appears from the words used, there is no need to go further, for in such a case the words must govern; or, as it is sometimes said, where there is no doubt, there is no room for construction." Clark, Contracts, p. 590.

The intention is so potent that, where it appears that the parties intended the contract to be an entire one, such intention will control, and prevent its being considered as divisible, although it might so be regarded in the absence of the contrary intention. 7 Am. and Eng. Ency. Law (2d ed.), 95; *Wooten v. Walters* (1892), 110 N. C. 251, 14 S. E. 734; *Loud v. Pomona Land, etc., Co.* (1894), 153 U. S. 564, 14 Sup. Ct. 928, 38 L. Ed. 822; *Southwell v. Beezley* (1875), 5 Ore. 458.

The contract under examination precludes the court from treating it as a divisible one. The parties deliberately carry and put the illegality into every portion thereof. The language used is: "It is expressly understood and agreed that the consideration for granting the rights and privileges herein expressed to said second party, is the covenant and agreement of said second party not in any manner, directly or indirectly, to interfere with," etc. They thus say that the right to cross appellee's track was given in consideration of its undertaking not to compete with it for freight. What court will dispute them? Who will, in the face of this deliberately made agreement, say that the consideration for the right to cross was anything else? *Reagan v. First Nat. Bank* (1902), 157 Ind. 623. It is but just to appellant's attorneys, who have argued this case with distinguished ability, to say that they have not suggested such action.

Probably an interlocker and signal system ought to be constructed at this crossing. But that is not a question in this case. This leads to an affirmance of the judgment, and it is so ordered.

Henley, C. J., Comstock and Robinson, JJ., concur. Wiley, P. J., and Black, J., dissent.

## DISSENTING OPINION.

WILEY, P. J.—I cannot concur in the opinion reached by the majority of my associates, nor in the reasoning leading thereto. That I may fully express my views upon the legal questions involved, I deem it necessary to state fully the facts stated in the complaint.

In July, 1889, the Louisville, New Albany & Chicago Railway Company owned and operated a line of railway, running north and south in and through Lawrence county, Indiana. At the city of Bedford, in said county, it maintained a station and telegraph office. At that time the Evansville & Richmond Railway Company was constructing a line of railroad in and through said county, running east and west. The latter company had to cross the former company's right of way and track, about 2,125 feet north of the former's telegraph office at Bedford. On July 29, 1889, the two companies entered into a written contract, by which the latter company bound itself to "put in and permanently maintain, protect and operate an interlocking switch and signal system" at the intersection of the two roads. In that contract the Louisville, New Albany & Chicago Railway Company is designated a "party of the first part," and the Evansville & Richmond Railway Company is designated as "party of the second part," and for convenience and brevity these terms will hereafter be used in this opinion where a reference to the two companies is necessary. By the terms of that contract the party of the first part granted to the party of the second part the right to construct and maintain its railroad over and across the main track, switches proper, and what was known as the "Blue Hole Switch," owned by the party of the first part. The crossing was to be on a grade with the road of the first party, and the point of crossing was designated.

The terms upon which the grant to cross was given may be stated as follows: The party of the second part was to

248 APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. v. Southern Ind. R. Co.—38 Ind. App. 234.

furnish all material and perform all labor required to raise the track, known as the "Blue Hole Switch" (which was a track connecting with the main line of the first party extending to the Chicago & Bedford Stone Company), to a common grade or level with the main line, and to raise all bridges on said switch so as to conform to such grade. The second party was to perform all labor incident to the construction and maintenance of said crossing, including crossing frogs, targets, signals, etc.; and, inasmuch as the grade at the point of crossing was heavy, and trains of the road of the first party could not be stopped at said crossing, the second party agreed to put in and permanently to maintain, protect and operate an interlocking switch and signal system, of a safe and approved kind, so as to enable the first party, without violation of law, to cross at said point without having to stop its trains. · The first party at all times was to have priority of right to run its trains of the same class over said crossing, as against the right of trains of the second party. If the first party at any time wished to construct additional tracks at the point of intersection, the second party, at its own expense, was to adapt its own tracks to such additional tracks, and construct and maintain one-half of all necessary crossings, frogs, targets, signals, etc. All appliances, structures, fixtures and instruments pertaining to said crossing, switches and signals were to be of such design, pattern, quality and construction as were necessary and safe in the opinion of the proper officers of the first party, and all persons employed by the second party to perform services at such crossings were to be subject to removal at the demand of the first party. The second party was to protect and save harmless the first party against all loss, damage, cost or expense which might result either in the construction, maintenance or use of the crossing, or from the acts of any person who might· be appointed to perform services by the second party at the crossing.

The sixth subdivision or clause of the contract is as follows:

"The second party agrees not to run any track or tracks to or from any stone-quarry which is connected with the road of the first party by switches or tracks built thereto by said first party or under contract therefor, and will not make any demands for the use of said first party's tracks or switches leading to any such quarries for the shipment of stone therefrom, the express purpose of this clause being to preserve to said first party all rights and benefits now acquired in the business of such quarries; and it is hereby expressly understood and agreed that the consideration for granting the rights and privileges herein expressed to said second party is the covenant and agreement of said second party not in any manner, directly or indirectly, to interfere with or divert the benefits now derived or to be hereafter derived from said first party's connection and business with such quarries."

The seventh and last subdivision of the contract is as follows:

"In consideration of making a Y connection, it is agreed between the parties hereto that in case any party or parties require said first party to forward stone or other car-load freight to the line of the second party, it is agreed that the proportion of the through rate from any given quarry or station accruing to the party of the first part shall not be less than three cents per hundred pounds."

The interlocking switch provided for in the contract has never been constructed.

This action was brought by appellant, as successor to the Louisville, New Albany & Chicago Railway Company, against appellee, the successor to the Evansville & Richmond Railway Company, upon that contract.

The complaint is in three paragraphs, to each of which a separate demurrer was sustained. Appellant, assuming that each paragraph of complaint was impregnable to a

successful assault of a demurrer, stood upon the ruling thereon, and declined to plead over. From a judgment against it for costs, it prosecuted this appeal, and by its assignment affirms that sustaining the demurrer to its complaint was error.

In each paragraph of the complaint it is averred that in 1897 appellant became the owner of all the rights and property of the Louisville, New Albany & Chicago Railway Company; that on July 29, 1889, its predecessor entered into the contract above specified, with the Evansville & Richmond Railway Company; that said last-named company was incorporated under the laws of Indiana for the purpose of owning and operating a railway from Elnora, Daviess county, to the city of Richmond, and to construct said road it was necessary to cross the line of road of the Louisville, New Albany & Chicago Railway Company in the city of Bedford, and that said contract was entered into for the purpose of securing a right to make said crossing; that at the time of the execution of said contract the Evansville & Richmond Railway Company had not completed its road, and had done no construction on the right of way or tracks of appellant's predecessor; that said company had no interest in said right of way or tracks, or right to cross the same, and entered into said contract for the sole purpose of securing said right.

Each paragraph contains the following averments: "That said Evansville & Richmond Railway Company took possession of said easement and right of way under said contract; that the only consideration received or promised for the granting of said easement and right to cross said right of way and railroad was the covenant expressed in said contract to do and perform the matters and things therein set forth." It is further averred that, acting under the right given by said contract, said Evansville & Richmond Railway Company entered upon said right of

way and tracks, and constructed its superstructure, laid its steel and completed its railway across the same, and while it continued to own said railway it so occupied said crossing and tracks; that the Evansville & Richmond Railway Company, to secure certain bonds, executed its mortgage on its railway property, but at the time of the execution of said mortgage it had not constructed its railway at said point of crossing, and it did not then have any right to or interest in the property of appellant's predecessor, or right to cross such right of way or tracks, and that said right so to cross was not secured until long afterward, and by said contract alone; that said Evansville & Richmond Railway Company defaulted in the payment of said mortgage debts, and on this account said mortgages were foreclosed and all of its rights and property sold to pay said indebtedness; that at said sales the Evansville & Richmond Railway Company became the purchaser of said rights and property; that since said purchase the Evansville & Richmond Railway Company continued to own said railway and to operate said rights and franchises; that the corporate name thereof was afterward changed to the Southern Indiana Railway Company, and since said change in name appellee has continued to own said rights and franchises and to operate said line of railroad of its predecessor company, and has "continually occupied said crossing, and has asserted the right and title to said easement under and by virtue of the title acquired at said foreclosure sales, and not otherwise."

Each paragraph contains the following averments: "The Southern Indiana Railway Company obtained and took the right and title which said Evansville & Richmond Railway Company acquired in and to said easement in said right of way crossing, and has ever since held the same, and has always asserted its legal right to do so under said agreement, and by no other source of title."

All three paragraphs aver that on account of the steep grade on appellant's road at and near the point of crossing,

which is averred to be fifty-seven feet to the mile, it is very difficult, and at times impossible, to stop its south-bound trains before reaching said crossing; that in running its trains northward it is necessary to run at a rapid rate of speed, in order to obtain sufficient momentum to enable an engine to draw the trains up and over the grade; that on account thereof there has been and will continue to be great danger of collision, which would involve great loss of life and property; that if said interlocking switch is installed it will be impossible for trains and engines to collide on said roads at said crossing, and all danger to life and property will be thereby avoided.

Each paragraph also avers that said contracting party and its successor (the appellee) have failed and neglected to perform the conditions of said contract on their part. The second paragraph differs from the first and third, in that, in addition to all of said general averments, it alleges that, pending the receivership and foreclosure proceedings against the Evansville & Richmond Railway Company, the Louisville, New Albany & Chicago Railway Company intervened, and asked that performance of said contract be required, and that before the trustees of the bondholders of said Evansville & Richmond Railway Company or the appellee acquired any interest in said property under said sale, they had actual and constructive notice of said contract and its terms and provisions.

The prayer of the first and second paragraphs of complaint is that appellee be required to construct and maintain the interlocking switch provided for in the contract sued on. The prayer of the third paragraph is for $5,500 damages, which appellant avers it has sustained by reason of the failure to perform the contract, and that that amount would be required to construct, etc., said interlocking switch.

Counsel for appellee directed the major part of their argument against the sufficiency of the complaint, on the

theory that the contract sued on is *ultra vires* and void. This contention is based upon the sixth subdivision of the contract, which we have quoted, which it is averred places an inhibition on the party of the second part from running any track or tracks to or from any stone-quarry which is connected with the road of the first party. It is urged that such an inhibition is against public policy, and therefore the contract cannot be enforced.

The right of one railroad to cross another is a recognized right, and public policy and the general interests of the public require it. That right is regulated by statute in this jurisdiction. §5153 Burns 1901, cl. 6, §3903 R. S. 1881. Provision is made that, in case one railroad company desires to cross the right of way and tracks of another, and the two companies cannot "agree upon the amount of compensation to be made therefor, or the points or manner of such crossings and connections, the same shall be ascertained and determined by commissioners," etc. Section 5154 Burns 1901, §3904 R. S. 1881, provides that "where it becomes necessary for the track of one railroad company to cross the track of another railroad company, the company owning the road last constructed at such crossing shall, unless otherwise agreed to between such companies, be at the expense of constructing such crossing in a manner to be convenient and safe for both companies."

In the absence of a contract to the contrary, when such crossing is constructed, the statute (§5155 Burns 1901, §3905 R. S. 1881) makes it the duty of each company to maintain and keep in repair its own track so as at all times to provide a ready, safe and convenient crossing for all locomotives or trains passing on either road at such point.

Independently of any statutory provision, I have no doubt of the right of two railroad companies to contract between themselves upon what terms and conditions a crossing may be constructed. Possessing such right, it carries with it the additional right to contract as to the

kind and character of the crossing and fix the burden by which it shall be maintained. This right, it must be understood, cannot be exercised to the detriment of the public, nor in contravention of public policy. Having a right so to contract, it is the duty of the courts to enforce such contracts, if they are in all things valid.

It must be kept in mind that where two railroads intersect or cross, the one last constructed does not acquire any title to the right of way, property and track of the original road, but only acquires an easement therein.

In the case I am now considering, there is no doubt but that the two original contracting companies had a right to contract between themselves, whereby the "party of the second part" bound itself to construct and maintain at the point of crossing an interlocking switch.

By entering into the contract, the "party of the first part" parted with a valuable right, in that by crossing its tracks the latter company would, to some extent at least, interfere with the free and uninterrupted use of its property, which it previously enjoyed. By virtue of the terms of the contract the "party of the second part" acquired and enjoyed all the rights and benefits thereby conferred upon it. The appellee here is now enjoying such rights and benefits by succession.

If, under the contract, appellee's predecessor acquired an easement, and of this there can be no doubt, then the first question for determination is: Did such easement pass to appellee? The complaint avers that appellant succeeded to all rights, privileges, property and contracts of the Louisville, New Albany & Chicago Railway Company, and that appellee in the foreclosure proceeding, and purchase thereunder, acquired all the rights, privileges, property, etc., of the Evansville & Richmond Railway Company.

It is hard to conceive, from a legal or equitable standpoint, how, under such conditions and circumstances, either of the succeeding companies could acquire all the beneficial

rights, privileges, property, etc., of their predecessors, and be relieved of all their burdens.

By the terms of the contract, appellee's predecessor acquired a right of way over and across the private property of the Louisville, New Albany & Chicago Railway Company. Thus by the contract a covenant was created, which covenant runs with the use of such way, and, under the authorities, is binding upon the appellee which succeeded to the rights, etc., of one of the contracting parties. *Dayton, etc., R. Co.* v. *Lewton* (1870), 20 Ohio St. 401; *Midland R. Co.* v. *Fisher* (1890), 125 Ind. 19, 8 L. R. A. 604, 21 Am. St. 189; *Lake Erie, etc., R. Co.* v. *Priest* (1892), 131 Ind. 413, 416; *Toledo, etc., R. Co.* v. *Cusand* (1893), 6 Ind. App. 222, 224; *Lake Erie, etc., R. Co.* v. *Griffin* (1900), 25 Ind. App. 138.

Appellee cannot assert its right to exercise the beneficial privileges given by the contract, and at the same time repudiate its covenants. It enjoys its easement to cross appellant's tracks, side-tracks and right of way, and unless there is something in the contract itself to exempt it from performance—as, for instance, the contract is *ultra vires*—then it is bound to perform. To permit it to retain its rights and privileges, and repudiate its burdensome obligations—its covenants—would be antagonistic to the broad and wholesome principles of equity, and shock good conscience. *Louisville, etc., R. Co.* v. *Power* (1889), 119 Ind. 269, 272; *Bloomfield R. Co.* v. *Grace* (1887), 112 Ind. 128; *Lake Erie, etc., R. Co.* v. *Griffin* (1886), 107 Ind. 464; *Midland R. Co.* v. *Fisher, supra; Joy* v. *St. Louis* (1891), 138 U. S. 1, 11 Sup. Ct. 243, 34 L. Ed. 843. See, also, *Brannon* v. *May* (1873), 42 Ind. 92; *Hazlett* v. *Sinclair* (1881), 76 Ind. 488, 40 Am. Rep. 254.

The question of controlling influence, and the one possibly fraught with the greatest difficulty, is that raised by appellee—that by reason of the sixth clause or subdivision of the contract it is *ultra vires*. Under the facts pleaded,

it can only be held to be *ultra vires* upon two grounds: (1) That the contract was prohibited by statute; or (2) that it is against public policy. It is certain that there was no statutory inhibition forbidding the contract, and hence, if *ultra vires,* it is because it was against public policy. In this connection, it is well to consider, first, the power of two corporations to enter into contracts. Generally speaking, there is no question but that they possess such power.

The contracting parties here, therefore, had the right and authority to agree between themselves that "the party of the second part" might cross the right of way and tracks of "the party of the first part." The statute above cited specifically creates such right. The right to contract implies the right to fix the terms of the contract. The contract is now an executed one, viz., the appellee is in the full enjoyment of all the rights and privileges granted to its predecessor, and to which it succeeded. While it continues in the enjoyment of such rights and privileges, and in the possession and use of the easement thus granted to it, can it in equity deny the validity of the contract?

For the purposes of the determination of this question, let it be conceded that the contract was *ultra vires.* When this contract was executed "the party of the second part" had no right to any part of appellant's right of way over which to effect a crossing, except a statutory right. It did not proceed under the statute, but selected its remedy by contract. Under that contract it took possession, and still retains and enjoys possession. If inquiry should be made of appellee by what right it crosses appellant's right of way and tracks, and thus occupies the same, it would have to answer that it was by reason of the right acquired by the contract.

In *Louisville, etc., R. Co.* v. *Power, supra,* appellant was occupying its right of way under a deed, and it sought to deny its validity because no grantee was named therein.

It was held that, holding the land under the deed as it did, it was bound to perform its contract to fence its right of way.

In *Midland R. Co.* v. *Fisher, supra,* it was held that one who takes a privilege in land to which a burden is annexed, has no right to claim the privilege and deny the responsibility of the burden. That a party who acquires such a privilege acquires it subject to the conditions and burdens bound up with it, and must, if he asserts a right to the privilege, bear the burden which the contract creating the privilege brought into existence. The court said: "The one he cannot have at the expense of the other."

The case of *Nashua, etc., R. Corp.* v. *Boston, etc., R. Corp.* (1884), 19 Fed. 804, 16 Am. & Eng. R. R. Cas. 488, was where the two companies entered into a pooling agreement. While acting under the agreement, one company received money to which the other was entitled. In an action to recover for the money so received, the defendant interposed the defense that the contract was invalid. It was held that though the pooling contract was not within the corporate powers of the two companies, it could afford no defense to the Boston company when called upon to restore to the plaintiff the sum received in excess of its due. The decision was based upon the proposition that the contract had been fully executed, and the defendant had availed itself of all the benefits to be derived from it, and was therefore estopped from denying its validity.

The case of the *Central Trust Co.* v. *Ohio Cent. R. Co.* (1885), 23 Fed. 306, 23 Am. & Eng. R. R. Cas. 666, also involved rights growing out of a pooling contract. It was held that, whether the contract was legal or not, the question was whether one party, who had received all the expected benefits to be derived from it, should account for the fruits of its performance, which by its terms belonged to another, and which, contrary to its terms, it retained. The equitable rule was there enforced requiring an accounting.

258    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. v. Southern Ind. R. Co.—38 Ind. App. 234.

The case of *Joy v. St. Louis, supra,* is supportive of the principle of law now under consideration. In that case the city of St. Louis gave two railway companies the right to construct a track through one of its parks. The agreement provided that other roads should use the track upon specific and equitable terms. Such use was granted to avoid cutting up the park by other roads. In an action to enforce that part of the agreement by one of the roads, a defense was predicated upon the proposition that the city had no right to impose such terms. In deciding the question the court said: "In order to obtain the right of way through the park, the Kansas City company subjected itself to the condition imposed by paragraph nine of the tripartite agreement, and it is right that that company and its successor should be held to a strict compliance with its covenant. The appellants, although enjoying the benefit of the $40,000 expended by the park commissioners and of the right of way through the park, deny their liability under the agreement, without offering to return to the grantors the property obtained by virtue of the agreement. Under such circumstances these parties cannot be heard to allege that the agreement was against the policy of the law."

In *Warren v. Jones* (1862), 51 Me. 146, one of the parties sold to the other his factory and "all his trade and customers." The purchaser brought an action against the seller to prevent him from entering into the same business in violation of his contract. The seller contended that the contract was in restraint of trade, and hence was against public policy. The court tersely disposed of the question by declaring that the contract was not against the policy of the law, and, even if it was, the defendant could not profit by it and at the same time retain the consideration.

The following cases are in point and illustrative of the question under consideration. I cite them without comment: *Manchester, etc., Railroad v. Concord Railroad* (1889), 66 N. H. 100, 20 Atl. 383, 9 L. R. A. 689, 49

Am. St. 582; *Brooks* v. *Martin* (1863), 2 Wall. 70, 17 L. Ed. 732; *Wiggins Ferry Co.* v. *Chicago, etc., R. Co.* (1881), 73 Mo. 389, 39 Am. Rep. 519.

The term *ultra vires,* in its literal sense, means beyond the power or capacity of a corporation, company or person. This must be understood to mean lawful authority. 27 Am. and Eng. Ency. Law, 352; Century Dict.; Brown's Law Dict.; Anderson's Law Dict.

In modern jurisprudence, the defense of *ultra vires* is very generally regarded by the courts as an ungracious and odious one, and it now seems to be firmly settled that neither party to the contract can avail himself of such defense, when the contract has been fully performed by the other party, and he has received the full benefit of the performance of the contract. If an action cannot be brought directly upon the contract, either equity will grant relief, or an action in some other form will lie. 27 Am. and Eng. Ency. Law, 360; *Whitney Arms Co.* v. *Barlow* (1875), 63 N. Y. 62, 20 Am. Rep. 504.

It has been declared that, generally speaking, the rule of *ultra vires* prevails only where the contracts of corporations remain wholly executory. *Thompson* v. *Lambert* (1876), 44 Iowa 239.

Dealings of corporations, which, on their face or according to their apparent import, are within the powers granted, are not to be considered as illegal or unauthorized, without some evidence tending to show that they are of such a character. In the absence of proof, there is no presumption that the law has been violated. 27 Am. and Eng. Ency. Law, 355; *Chautauqua County Bank* v. *Risley* (1859), 19 N. Y. 369, 75 Am. Dec. 347; *Allegheny City* v. *McClurkan* (1850), 14 Pa. St. 81; *Mitchell* v. *Rome R. Co.* (1855), 17 Ga. 574; *Oxford Iron Co.* v. *Spradley* (1871), 46 Ala. 98; *Downing* v. *Mt. Washington R. Co.* (1860), 40 N. H. 230; *Union Water Co.* v. *Murphy's Flat Fluming Co.* (1863), 22 Cal. 620.

260    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. v. Southern Ind. R. Co.—38 Ind. App. 234.

In the case of *Bissell* v. *Michigan, etc., R. Co.* (1860), 22 N. Y. 258, the rule was declared that when a corporation received the consideration of its contract, although it might be unauthorized, and a restitution would not do complete justice, the remedy of the other party is not confined to a suit in disaffirmance of the contract, but may be directly upon it, and would be enforced under any circumstances of controlling equity.

There are numerous authorities holding that the ground upon which the defense of *ultra vires* is most generally excluded is that of estoppel; and this, of course, is on the basis that the corporation, having received the fruits of the contract, should not be permitted to plead want of power in the corporation, and thus escape liability. This principle is fully discussed in 27 Am. and Eng. Ency. Law, 361, and numerous authorities are collected and cited.

In the contract before us, it must be kept in mind that the contract was fully executed on the part of one of the contracting parties. By it the other party got all that it bargained for, and is still enjoying its fruits. The supreme court of Colorado has held that where a corporation has received the benefit of a contract it may not deny its validity. *Denver Fire Ins. Co.* v. *McClelland* (1885), 9 Colo. 11.

And so there is a distinction between *ultra vires* contracts purely executory and those fully executed on one side. Such distinction is founded in reason and good conscience.

Where the contract has been fully performed by one of the parties, the infraction of the law has already taken place, which eliminates all questions of public policy, and allows the courts to deal with the contract upon equitable principles. *Pennsylvania R. Co.* v. *St. Louis, etc., R. Co.* (1886), 118 U. S. 290, 6 Sup. Ct. 1094, 30 L. Ed. 83 ; *St. Louis, etc., R. Co.* v. *Terre Haute, etc., R. Co.* (1892), 145 U. S. 393, 12 Sup. Ct. 953, 36 L. Ed. 748 ; *Thomas* v. *West Jersey R. Co.* (1879), 101 U. S. 71, 25 L. Ed. 950 ; *Mal-*

MAY TERM, 1906. 261

Chicago, etc., R. Co. v. Southern Ind. R. Co.—38 Ind. App. 234.

lory v. *Hanaur Oil Works* (1888), 86 Tenn. 598, 8 S. W. 396; *Darst* v. *Gale* (1876), 83 Ill. 136; *Bradley* v. *Ballard* (1870), 55 Ill. 413, 8 Am. Rep. 656.

Where one railroad corporation used the roadbed, rolling stock and equipments of another, it was held that it could not set up the defense of *ultra vires* to a bill in equity by the latter, for an accounting and return of the property. *Manchester, etc., Railroad* v. *Concord Railroad, supra.* The language of the court in that case is so forceful and clear that we quote the following: "The defense set up is so repugnant to the natural sense of justice, so contrary to good faith and fair dealing, and so opposed to the weight of modern authority, that it need only be said that in equity, at least, neither party to a transaction *ultra vires* simply is heard to allege its invalidity while retaining its fruits. However the contractual power of the defendants may be limited under their charter, there is no limitation of their power to make restitution to the other party, whose money or property they have obtained through an unauthorized contract; nor, as a corporation, are they exempted from the common obligation to do justice which binds individuals, for this duty rests upon all persons alike, whether natural or artificial." See *Memphis, etc., R. Co.* v. *Dow* (1884), 19 Fed. 388; *Brown* v. *City of Atchison* (1888), 39 Kan. 37, 17 Pac. 465, 7 Am. St. 515; *Manville* v. *Belden Min. Co.* (1883), 17 Fed. 425; *United Lines Tel. Co.* v. *Boston, etc., Trust Co.* (1893), 147 U. S. 431, 13 Sup. Ct. 396, 37 L. Ed. 231; *Buford* v. *Keokuk, etc., Packet Co.* (1879), 69 Mo. 611.

In *Bedford Belt R. Co.* v. *McDonald* (1897), 17 Ind. App. 492, 60 Am. St. 172, it was held that where a private corporation has entered into a contract, not immoral in itself and not forbidden by any statute, and it has been in good faith fully performed by the other party, the corporation will not be heard on the plea of *ultra vires*. 5 Thompson, Corporations, §6026,

262    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. *v.* Southern Ind. R. Co.—38 Ind. App. 234.

*Prima facie* all contracts of corporations, public or private, are valid, and it is incumbent on those who impeach them to show that they are invalid. *Smith* v. *Board, etc.* (1893), 6 Ind. App. 153. If there was any doubt about the correct meaning and interpretation of clause sixth of the contract, it is clearified by the seventh. It is there provided that, in consideration of making a Y connection, "it is agreed between the parties· hereto that in case any party or parties require said first party to forward stone or other car-load freight to the line of the second party, it is agreed that the proportion of the through freight from any given quarry or station accruing to the party of the first part shall not be less than three cents per hundred pounds."

Thus it appears that under the contract appellee had access to all such quarries, and was entitled to receive, upon a fixed consideration, freight therefrom to be shipped over its lines. By the terms of the contract appellant was bound to deliver the freight to it. In this regard the rights of the public are protected.

It affirmatively appears from the contract itself that the switches or spurs referred to were additional facilities for handling freight. There was a separate one for each quarry or customer.

The duty of common carriers in regard to receiving freight for transportation is fixed by statute. §5185 Burns 1901, §3925 R. S. 1881. Railroad companies are not required to go off of their lines to get freight for transportation. They have filled the measure of their statutory duty to the public, in that regard, when they have established and continue to maintain fixed places and ordinarily convenient accommodations for receiving and discharging freight. The statute does not impose upon a railway company the duty of establishing a station at any particular place except at crossings, and they are only required to receive freight at the places established for that purpose. See *People* v. *New York, etc., R. Co.* (1887), 104 N. Y. 58, 9 N. E. 856, 58

Am. Rep. 484; *Northern Pac. R. Co.* v. *Washington Ter.* (1892), 142 U. S. 492, 12 Sup. Ct. 283, 35 L. Ed. 1092; *State, ex rel.,* v. *Kansas City, etc., R. Co.* (1899), 51 La. Ann. 200, 25 South. 126, 14 Am. and Eng. R. R. Cas. N. S., 461; *State* v. *Des Moines, etc., R. Co.* (1893), 87 Iowa 644, 54 N. W. 461, 8 Am. R. R. and Corp. Cas., 1; *Florida, etc., R. Co.* v. *State, ex rel.* (1893), 31 Fla. 482, 13 South. 103, 20 L. R. A. 419, 34 Am. St. 30, 8 Am. R. R. and Corp. Cas. 94.

In *Louisville, etc., R. Co.* v. *Flanagan* (1888), 113 Ind. 488, it was held that a railroad company was not liable for failing to furnish cars, and for not transporting goods, unless goods are offered at a regular depot, or other usual or designated place for receiving freight. 3 Wood, Railway Law, p. 1580.

It logically follows, from what I have said and the authorities, that a railroad company owes no duty to a shipper or the public to receive freight at any place other than that provided for that purpose.

An able and exhaustive discussion of the question now under consideration will be found in the following cases: *Atchison, etc., R. Co.* v. *Denver, etc., R. Co.* (1884), 110 U. S. 667, 682, 28 L. Ed. 291; *Missouri, etc., R. Co.* v. *Carter* (1902), (Tex.), 68 S. W. 159, 26 Am. and Eng. R. R. Cas., N. S., 538.

But, if that clause of the contract which seeks to prohibit the junior company from running any switches or spurs to stone-quarries, with which the senior company was then connected, etc., is invalid, as being against public policy and in restraint of trade, does it necessarily follow that it vitiates the entire contract? If that provision of the contract is void, then no inhibition is placed upon appellee from connecting its line of road with such stone-quarries by switches. If that provision can be eliminated without destroying the contract, then the remaining provisions may be enforced.

264    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. v. Southern Ind. R. Co.—38 Ind. App. 234.

Aside from the consideration expressed in that provision, a valuable consideration moved to the junior company in its acquirement of the right to cross the senior company's tracks and right of way. By agreeing to let it so cross, it was relieved from proceeding under the statute; also from the assessment of damages and the payment thereof. A valuable consideration passed to the senior company, in that the junior company agreed to construct, equip and maintain an interlocking switch, so as to permit the uninterrupted and safe running of its trains over the crossing. These considerations were both legal and valuable, so that if the consideration expressed in the sixth clause of the contract was illegal, there is sufficient and valid consideration in other provisions to support the contract.

It is the law that where valid and illegal considerations in the same contract are susceptible of division or distinction, that part of the consideration which is legal may be enforced. *Pierce* v. *Pierce* (1897), 17 Ind. App. 107; *Emshwiler* v. *Tyner* (1899), 21 Ind. App. 347, 69 Am. St. 360.

The recent case of *Trentman* v. *Wahrenburg* (1903), 30 Ind. App. 304, is directly in point. That was an action on a contract, where the defense interposed was that it was void because it was in restraint of trade. The court said: "But if appellees' contention should be sustained—which it cannot—still as the complaint does not aver that this part of the contract has been violated, the contract being divisible, that part of it which is legal could be enforced."

Quoting from *Oregon Steam Nav. Co.* v. *Winsor* (1873), 87 U. S. 64, 22 L. Ed. 315, it is said: "It is laid down by Chitty as a result of the cases, and his authorities support the statement, 'that agreements in restraint of trade, whether under seal or not, are divisible; and accordingly, it has been held that when such an agreement contains a stipulation which is capable of being construed divisibly, and one part thereof is void as being in restraint of trade,

whilst the other is not, the court will give effect to the latter, and will not hold the agreement void altogether.' "

So, if it be conceded that clause sixth of the contract is invalid, all of its other provisions are valid, and as that which is valid is divisible from that which is invalid, if in fact it is, the valid provisions may be enforced. And it is worthy of remark, in this connection, that appellant is only seeking to enforce that provision of the contract about which there is no question as to its validity.

This action is to enforce that part of the contract by which the junior company agreed to construct and maintain an interlocking switch. It is not, and could not be, in law or reason, contended that the two companies could not make that agreement. That agreement rests upon a sufficient consideration.

In this action no right or benefit is claimed or asserted under subdivision sixth of the contract. As it must be conceded that the provision of the contract here sought to be enforced is valid, the fact that some other provision, as asserted by appellee, is invalid, the contract being sustainable regardless of such asserted invalid provision, relief should be given to the end that that part of the contract which is valid might be enforced, and the rights and equities of the parties preserved. *City of Valparaiso* v. *Valparaiso City Water Co.* (1903), 30 Ind. App. 316.

In the case of *Hitchcock* v. *City of Galveston* (1877), 96 U. S. 341, 24 L. Ed. 659, is a very able discussion of the question we are now considering. That action grew out of a contract between appellant and appellee, by which the former agreed to improve and pave certain streets, and the latter agreed to make payment in certain bonds. The contention of the appellee was that the city had no right to issue bonds for that purpose, and that therefore the whole contract was inoperative and void. It was held that if the city had no authority to issue bonds, it did not follow that the contract was wholly illegal and void or that the plaintiff

266    APPELLATE COURT OF INDIANA,

Chicago, etc., R. Co. *v.* Southern Ind. R. Co.—38 Ind. App. 234.

had no right under it. The court said: "They are not suing upon the bonds, and it is not necessary to their success that they should assert the validity of those instruments. It is enough for them that the city council have power to enter into a contract for the improvement of the sidewalks; that such a contract was made with them; that under it they have proceeded to furnish materials and do work, as well as to assume liabilities; that the city has received and now enjoys the benefit of what they have done and furnished; that for these things the city promised to pay; and that after having received the benefit of the contract the city has broken it. It matters not that the promise was to pay in a manner not authorized by law. * * * The contract between the parties is in force, so far as it is lawful. * * * Having received benefits at the expense of the other contracting party, it cannot object that it was not empowered to perform what it promised in return, in the mode in which it promised to perform." The case of *Nebraska City* v. *Nebraska City, etc., Coke Co.* (1879), 9 Neb. 339, 2 N. W. 870, was where the appellee sued appellant to recover the contract price of gas furnished the city for a certain month. The city defended on the ground that the contract contained certain illegal provisions respecting the exemption of property from taxation, etc. It was held that, admitting that in the particulars designated the city authorities exceeded their powers, which was not decided, that would be no defense to the action; that under the charter they were authorized to contract for lighting the streets with gas, and to bind the city for the price agreed upon; and that so long as the city voluntarily received gaslight, under the provisions of the contract, it could not resist payment of the agreed price simply because of the alleged illegal promises as to the particular fund from which the money should be drawn. The court said: "The consideration for which these promises were made being entirely legal, and the price agreed upon being

payable, if not otherwise, from its general fund, these objectionable provisions may, if necessary, be rejected, and the rest of the contract permitted to stand; especially where, as here, the city has received the consideration for which the promises were made. Chitty, Contracts, 574. If the company were resisting a tax levied in violation of this agreement, or if they were endeavoring to compel payment of a gas bill out of the sinking fund, the argument of counsel for the city in this behalf would be entitled to great weight, but under the issues of this case we deem it altogether inapplicable." *Argenti* v. *City of San Francisco* (1860), 16 Cal. 255, 264; *City of Brenham* v. *Brenham Water Co.* (1887), 76 Tex. 544, 4. S. W. 143; *Dodge* v. *City of Council Bluffs* (1881), 57 Iowa 560, 10 N. W. 886; *Maher* v. *City of Chicago* (1865), 38 Ill. 266.

This is not an action to enforce any right under the sixth subdivision of the contract, but to secure to appellant the consideration moving to it in the promise to construct, etc., an interlocking switch. In other words, it is an action to require appellee to do that which it agreed to do, and which it had an unquestioned right to bind itself to do.

It will be time to consider any question that may arise affecting the rights of the parties or the public, as fixed by the sixth subdivision of the contract, when that question is presented. It is not before us now. That clause of the contract may be eliminated, and the contract be enforced as to the immediate rights of the parties under it.

It is far more important to protect life and property by requiring appellee to comply with its contract to erect and maintain an interlocking switch, and more to the interest of the public, than it is to seek the aid of courts to annul a part of the contract under which the complaining party is not seeking redress, but by which it secured all the rights it desired, and still continues to enjoy such rights.

In *Russell* v. *Pittsburgh, etc., R. Co.* (1901), 157 Ind. 305, 55 L. R. A. 253, 87 Am. St. 214, the court quotes ap-

provingly from *Baltimore, etc., R. Co.* v. *Voigt* (1900), 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560, the following: "It must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare."

One who seeks to put restraint upon the freedom of contract must make it plainly and obviously clear that the contract in question is void. *Payne* v. *Terre Haute, etc., R. Co.* (1902), 157 Ind. 616, 56 L. R. A. 472.

Common honesty, good conscience and well-settled principles of equity demand that appellee should perform the burdens of its contract while it continues to enjoy the benefits and fruits derived from it.

The judgment should be reversed, and the court below be directed to overrule the demurrer to each paragraph of the complaint.